KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

June 9, 2021

**VIA ECF**

Hon. James L. Cott, United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl St.
New York, NY 10007-1312

    Re:    *United States ex rel. Hart v. McKesson Corp.*, No. 15-Civ-0903 (RA) (JLC)

Dear Judge Cott:

Relator Adam Hart ("Relator") respectfully requests the Court's assistance resolving a dispute regarding the time period for Defendants' ("McKesson's") search and production of Phase 1 documents in response to Relator's First Set of Requests for Production. The parties have met and conferred and reached impasse.[1] McKesson has refused to search for documents postdating the filing of Relator's initial sealed complaint on February 6, 2015. Relator respectfully submits that the appropriate date range for production of documents is through May 29, 2020, the date of the order providing for the unsealing of Relator's Complaint (ECF 15).[2]

    **1.**    Relator's Amended Complaint (ECF 16, ¶¶ 52, 68) alleges that McKesson has

---

[1] The parties met and conferred regarding this issue on May 11, 2021 and June 3, 2021. The June 3 conference lasted approximately one hour and was attended by McKesson counsel Krysten Rosen-Moller, Nicholas Pastan, and Nicholas Baer and by Relator's counsel Bradley Oppenheimer and Jeremy Newman. Relator's counsel informed Defendants' counsel during the conference that the parties had reached impasse as to the issue raised in this letter.

[2] The parties have agreed that McKesson's search and production date range will generally begin on January 1, 2011. The parties are continuing to meet and confer as to whether McKesson will search for and produce documents from before that date in response to specific requests and do not seek the Court's intervention on that issue at this time.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. James L. Cott
June 9, 2021
Page 2

offered the Margin Analyzer and Regimen Profiler tools to customers as illegal kickbacks "[s]ince approximately 2011." McKesson offered these valuable tools to physician practices for free, but only if the practices would commit to buying a substantial majority of their drugs from McKesson. *See id.* ¶¶ 70, 95. McKesson used these illegal inducements to win business without competing on price; as a result, government health programs that reimburse patients' drug costs, such as Medicare, overpaid for drugs and paid for drugs tainted by this kickback. *See id.* ¶¶ 3, 8, 105. This conduct violated the Anti-Kickback Statute and False Claims Act and their state analogs. The Amended Complaint further alleges that McKesson "continues" to employ these illegal practices as of its filing date (June 3, 2020). *Id.* ¶ 50.

During the parties' meet-and-confer process, McKesson conceded that it is not aware of any material change in its sales practices with regard to the Margin Analyzer and Regimen Profiler since 2011. Furthermore, in its declaration in support of its motion to dismiss, McKesson expressly acknowledged that it was continuing to advertise these tools on its website at least through September 2020. *See* ECF 53-1 (McKesson marketing materials advertising the Regimen Profiler); ECF 53, ¶ 2 (certifying that these materials were downloaded from McKesson's website on September 30, 2020). Nonetheless, McKesson proposes to cut off its search and production in February 2015, when Relator filed his original sealed complaint. This February 2015 cut-off date is entirely arbitrary. McKesson has already produced documents in response to the Department of Justice's civil investigative demand ("CID") through at least July 2015. That production contains numerous documents post-dating February 2015, which establish critical elements of McKesson's fraud. For instance:

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. James L. Cott
June 9, 2021
Page 3

- Exhibit A is a May 2015 email chain ▮▮▮▮, describing the Margin Analyzer as a ▮▮▮▮ *Id.* at Hart-0050336-37.

- Exhibit B is a presentation from July 2015 describing the Margin Analyzer as ▮▮▮▮ *Id.* at Hart-0055535-40; *see also id.* at Hart-0055531 (describing Regimen Profiler as a ▮▮▮▮).

- Exhibit C is a June 5, 2015 email stating that the Margin Analyzer ▮▮▮▮ *Id.* at Hart-171732.

As these documents indicate, there is significant relevant evidence from after February 2015.

    **2.**    The Amended Complaint asserts claims throughout the time period Relator has proposed for McKesson's search and production. It alleges that the Margin Analyzer and Regimen Profiler tools are still in use as kickbacks today,[3] and the declaration McKesson has submitted to the Court corroborates that allegation. McKesson's motion to dismiss did not seek to eliminate claims from any specific time period between 2011 and the present. Because Relator has post-2015 allegations that the federal and state governments "continue[] to pay the claims that would not be paid but for Defendants' illegal conduct," *e.g.* Am. Compl. ¶ 129, and because McKesson has represented that its conduct has not changed, Relator is entitled to discovery post-2015, allowing him "to flesh out allegations [that] . . . initially have at least a modicum of objective support." *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023,

---

[3] *See, e.g.*, Am. Compl. ¶ 50 (alleging that "McKesson has given, and continues to give, its 'open market' customers valuable business-management tools at no cost" and that "[t]hese tools, which include the Margin Analyzer and the Regimen Profiler, have significant, independent value"); *see also id.* ¶¶ 17, 52, 121 (additional allegations relating to facts after February 2015).

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. James L. Cott
June 9, 2021
Page 4

at *2 (S.D.N.Y. Jun. 21, 2002) (internal quotations omittted).

In meet-and-confer discussions, McKesson has asserted that searching for documents through May 2020 would be unduly burdensome. But it failed to make any specific showing of what that burden might be. Such "conclusory statement[s]" are "entitled to no weight whatsoever," particularly given the highly relevant documents that are already in the record that post-date February 2015. *Caines v. City of New York*, 2003 WL 151993, at *1 n.1 (S.D.N.Y. Jan. 21, 2003) (quotation marks omitted); *see, e.g.*, *Many Amazing Ideas, Inc. v. Drybranch, Inc.*, 1992 WL 88182, at *1 (S.D.N.Y. Apr. 20, 1992) ("Objections on the ground that compliance would be 'unduly burdensome or expensive' are overruled in the absence of a factual, non-conclusory showing of the specific expenses involved."). In any event, there is no *undue* burden in requiring discovery of the full period alleged in the Amended Complaint. *See, e.g.*, *United States v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005) (allegations in complaint control discovery time frame, and district court clearly erred by basing discovery on dates of relator's employment). In False Claims Act cases alleging ongoing conduct, courts have routinely endorsed discovery through the date the complaint was unsealed or, if later, the date an amended complaint was filed.[4]

McKesson's proposed limitation of the date range from January 2011 to February 6, 2015 would also unduly restrict the scope of Phase 1 and would require duplicative discovery in Phase 2, contrary to this Court's March 12, 2021 instructions. In seeking phased discovery, McKesson

---

[4] *See United States v. Austin Radiological Ass'n*, 2013 WL 1136668, at *7 (W.D. Tex. Mar. 18, 2013) (permitting discovery through date 60 days after complaint was unsealed); *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 2020 WL 6880835, at *6 (M.D. Ga. Nov. 23, 2020) (permitting discovery through date of filing of amended complaint).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Hon. James L. Cott
June 9, 2021
Page 5

repeatedly emphasized that its proposed "Phase 1" discovery would allow the parties to "test the allegations through the 13 [Phase 1] customers." Feb. 25, 2021 Hr'g Tr. 14:9-10.[5] It never suggested a temporal restriction ending in 2015. The Court has also recognized that McKesson's phased discovery proposal called for "full-bore" discovery and "soup to nuts" litigation as to the 13 physician practices at issue in Phase 1. *Id.* 18:19, 23:23. Under McKesson's proposed date limits, Relator will not be able to obtain full discovery about *any* of the 13 Phase 1 customers, and instead will require additional discovery regarding these 13 customers during Phase 2 in order to assess the full scope of McKesson's liability and damages. Moreover, preventing Relator from obtaining relevant evidence about the Phase 1 practices would preclude summary judgment at the end of Phase 1 since Relator will not have received discovery sufficient to oppose any such motion. *See Nat'l Life Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975) ("Since summary judgment is a drastic device, . . . it should not be granted when there are major factual contentions in dispute[,] . . . particularly so when, as here, one party has yet to exercise its opportunities for pretrial discovery.") (citations omitted). The Court should not endorse that inefficiency.

---

[5] *See, e.g.*, Feb. 25, 2021 Hr'g Tr. 13:22-25 ("Let's test their allegations through the 13 customers. Okay? That's our point. You get to make determinations about liability and causation and all the defenses[.]"), 14:17-20 ("[Y]ou will get to the issues in this case a lot faster if you limit this case to the 13 customers. You get to test the allegations and the defenses -- okay?"), 17:21-22 ("We're just saying, look, let's test the allegations on these 13 customers[.]"), 35:3-6 (arguing that broader extrapolation from Phase 1 findings would not be appropriate but that the Court could reach conclusions about "the 13 customers, the sample, if you will, because it's based on what's in the Complaint; that's the operative pleading that governs here. You're at least determining that based on the 13.").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Hon. James L. Cott
June 9, 2021
Page 6

                Respectfully submitted,

                */s/ Andrew C. Shen*

| | |
|---|---|
| Stephen S. Hasegawa | Andrew C. Shen |
| shasegawa@pcsf.com | ashen@kellogghansen.com |
| PHILLIPS & COHEN LLP | David L. Schwarz |
| 100 The Embarcadero, Suite 300 | dschwarz@kellogghansen.com |
| San Francisco, CA 94105 | James M. Webster |
| Tel: (415) 836-9000 | jwebster@kellogghansen.com |
| Fax: (415) 836-9001 | Bradley E. Oppenheimer |
| | boppenheimer@kellogghansen.com |
| Rishi Bhandari | KELLOGG, HANSEN, TODD, |
| rb@mandelbhandari.com | FIGEL & FREDERICK, P.L.L.C. |
| MANDEL BHANDARI LLP | 1615 M Street N.W., Suite 400 |
| 80 Pine Street, 33rd Floor | Washington, D.C. 20036 |
| New York, NY 10005 | Tel: (202) 326-7900 |
| Tel: (212) 269-5600 | Fax: (202) 326-7999 |
| Fax: (646) 964-6667 | |

Ari Yampolsky
ayampolsky@constantinecannon.com
CONSTANTINE CANNON LLP
150 California Street, Suite 1600
San Francisco, CA 94111
Tel: (415) 639-4001
Fax: (415) 639-4002

                *Counsel for Relator Adam Hart*