```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ADAM HART,

 4                  Plaintiff,

 5           v.                          15 CV 903 (RA)(JLC)

 6   McKESSON CORPORATION, et al.,

 7                  Defendants.          Conference
                                         (via Telephone)
 8   ------------------------------x
                                         New York, N.Y.
 9                                       June 16, 2021
                                         3:05 p.m.
10
     Before:
11
                         HON. JAMES L. COTT,
12
                                         U.S. Magistrate Judge
13

14                          APPEARANCES

15   KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC
          Attorneys for Plaintiff
16   BY:  BRADLEY E. OPPENHEIMER
          ANDREW C. SHEN
17        -and-
     PHILLIPS & COHEN LLP
18   BY:  STEPHEN S. HASEGAWA

19   COVINGTON & BURLING LLP
          Attorneys for Defendants
20   BY:  KRYSTEN ROSEN MOLLER
          ETHAN M. POSNER
21        NICHOLAS PASTAN

22

23

24

25
```

1          (Case called)

2          MR. OPPENHEIMER:  Good afternoon, your Honor, this is

3    Bradley Oppenheimer from Kellogg Hansen.  I am also joined by

4    Andy Shen from Kellogg Hansen and Steve Hasegawa from Phillips

5    & Cohen.

6          THE COURT:  Good afternoon, gentlemen.

7          MS. MOLLER:  Good afternoon, this is Krysten Rosen

8    Moller.  I am joined by Ethan Posner and Nick Pastan, all from

9    Covington & Burling.

10         THE COURT:  Good afternoon to all of you.

11         Who will be speaking for the defendant today?

12         MS. MOLLER:  Krysten.  I will be speaking.

13         THE COURT:  Ms. Moller you will be speaking?

14         MS. MOLLER:  Correct.  Thank you.

15         THE COURT:  I have a 502(d) order that appears to be

16   on consent, so I will sign that today.  I assume there is no

17   objection to the request that what was filed redacted can

18   remain redacted, Ms. Moller.  Is there any concern in that

19   regard?

20         MS. MOLLER:  No concern.  We agree with that.

21         THE COURT:  So that will be approved.

22         So the issue for us to discuss today is the question

23   about the time period for McKesson's search and production of

24   the phase 1 documents.  As I understand it, the Relator has

25   proposed a date range through May 29, 2020 and McKesson has

1    proposed a date range through February 6, 2015, McKesson's date

2    being the date the original complaint was filed and the

3    Relator's date being the date of the order providing for the

4    unsealing of the Relator's complaint.  I have reviewed the

5    letters that have been submitted.

6           Mr. Oppenheimer, would you like to be further heard on

7    the subject?

8           MR. OPPENHEIMER:  Just very briefly, your Honor.

9    Thank you.

10          One thing I would note is that throughout McKesson's

11   opposition they studiously avoid actually saying that anything

12   changed in any material way after February 6, 2015.  We think

13   that's an artificial date to use because the complaint wasn't

14   actually unsealed at that time and that's not the complaint

15   that operates anymore.  It's the amended complaint that does.

16   So the date the case became public, after May 29, 2020, is much

17   more rational to control, especially because, as far as we can

18   tell, it is essentially uncontested that the McKesson's use of

19   these tools continued throughout that entire period.

20          As we understand phase 1 discovery, it should cover

21   everything about these initial 13 facilities so that we don't

22   have to retread old ground in phase 2 by coming back to them to

23   depose the same witnesses, request more discovery from the same

24   custodians.  We are just setting it up to require that if we

25   cut it off at this artificial earlier deadline.

1          The bottom line is, in addition to what we have in the

2    letter, we think that McKesson's letter doesn't provide any

3    basis for cutting off at February 6, 2015 precisely because all

4    of this conduct continues going throughout and there is really,

5    I think, no dispute about that.

6          THE COURT:  Why do you need, if that's the case, nine

7    years of proof of the same thing that you would be getting four

8    years of proof during the period of time when the Relator

9    worked for McKesson?

10          MR. OPPENHEIMER:  Well, because we have got claims for

11    every claim -- I realize I'm using the word claim twice, so let

12    me sharpen that.  We have got claims for every reimbursement

13    request that was submitted by these different physician

14    practices throughout this period.  If we are restricted to a

15    smaller time frame than the entire period, even for just a part

16    of the category of evidence, then it creates an odd imbalance

17    that I think invites error, which is that, you know, we would

18    have these claims saying that the reimbursement requests filed

19    as late as May 28, May 29, 2020 are tainted by illegal

20    kickbacks.

21          And then McKesson can come back and say, well, you

22    haven't shown that we intended this at this point in time.

23    Your intent evidence ends earlier.  It doesn't make any sense

24    to do it that way.  We have got claims that cover the entire

25    time period and that means discovery should cover the entire

1   time period.

2          THE COURT:  Why is the May 29, 2020 date any less

3   arbitrary than the February 2015 date?

4          MR. OPPENHEIMER:  Your Honor, because we think that

5   once the case became public, there is a credible argument.  We

6   are not conceding that this is necessarily the case, but there

7   is a credible argument that McKesson could have changed its

8   policies or that it would be burdensome to conduct discovery

9   after that due to privilege concerns in terms of actually

10  discussing and defending this lawsuit and having documents

11  related to it pop up within the discovery.

12          We think that the date of the unsealing order is not

13  arbitrary because it's right around the time of the operative

14  pleading, the amended complaint, and it provides essentially a

15  healthy buffer ahead of that to make sure that there are no --

16  none of those logistical issues such as privilege that I just

17  mentioned.

18          It's tied to the allegations in the amended complaint

19  and that the amended complaint just a couple of days later

20  alleges that the conduct is continuing to the date thereof.

21  It's the complaint that controls the case.  The complaint

22  alleges continuing up to the date of that filing, so we think

23  May 29 is a reasonable approximation for that that adequately

24  covers the concerns about when the case became public.

25          THE COURT:  It alleges that, but it alleges it in the

1   broadest possible way.  So why does that serve as a predicate

2   for expanding the discovery period?

3          MR. OPPENHEIMER:  Well, because -- I am not sure I

4   agree that it alleges it in the broadest possible way.  I am

5   not sure how we could allege it other than by saying they

6   continued the same practices up to the present.

7          I would also note that the case law, which we cited in

8   our initial letter, says that when there is any sort of support

9   for that allegation of a continuing false scheme or fraudulent

10  scheme, that you get discovery through that period.  Here, I

11  think, we have got adequate support for it in spades.  We have

12  McKesson's own website that they have introduced into the

13  record on their opposition to the motion to dismiss advertising

14  that they are continuing to offer these same tools, even on

15  that same page calling the tool valuable.

16         This is not one of the cases that McKesson cited in

17  their letter where there is simply a lack of evidence of any

18  sort.  I think not only do we have evidence, we have got nearly

19  uncontested evidence that McKesson is offering saying that

20  these same practices are going on.

21         Another option that we have, although we don't think

22  this should be required, but if we really need to, we could

23  serve an interrogatory that asks the other side to say under

24  oath when and -- when there were and what the nature of them

25  was, any changes in their practices or policies regarding the

1    use of these tools.

2            I am quite confident, based on what we know, that

3    there are no material changes and that that further justifies

4    discovery through the entire time period.  We don't even think

5    we need to do that because we have got them arguing, on the

6    basis of evidence from September 2020, that the same practices

7    all apply here.

8            THE COURT:  I am not sure your proposed interrogatory

9    complies with Local Rule 33.3, but that's a bit of an aside.

10           Let me ask you another question.  In your letter you

11   say that under McKesson's proposed date, this is on page 5 of

12   your letter, under McKesson's proposed date limits the Relator

13   will not be able to obtain full discovery about any of the 13

14   phase 1 customers and, instead, will require additional

15   discovery regarding these 13 customers during phase 2 in order

16   to assess the full scope of McKesson's liability and damages.

17           Why is that the case?

18           MR. OPPENHEIMER:  That's the case because we have

19   alleged claims that go beyond February 6, 2015.  In either

20   direction, if we were to show beyond any doubt that there is

21   this ongoing fraudulent scheme, we still need more discovery

22   about what they were doing after that 2015 cutoff date about

23   what reimbursement requests were submitted during that time and

24   about the intent that McKesson had while offering these tools

25   at that time.

1          On the flip side, if you assume that McKesson can

2     prevail in showing that they did not intentionally offer these

3     tools as kickbacks prior to February 6, 2015, we still have

4     claims for after that period.  I don't think the Court would be

5     able to grant summary judgment for the period after February 6

6     when we haven't been able to develop any evidence about

7     McKesson's intent and the claims that were submitted for that

8     time.

9          THE COURT:  How do I reconcile your position, which

10    essentially is, as long as I allege a continuing course of

11    conduct, I'm entitled to discovery over a lengthy period of

12    time with principles of proportionality.

13         MR. OPPENHEIMER:  Your Honor, I think the

14    proportionality issue here has largely been addressed by

15    limiting this discovery to the phase 1 bounds that the Court

16    has already set out.  This is not asking for every document

17    that McKesson has nationwide.  This is specifically tailored to

18    phase 1, as the Court has previously instructed.

19         McKesson's letter doesn't actually set out any burden

20    of what this is.  They allege that it is many years and that

21    itself would be a burden to do.  But they haven't come forward

22    with any numbers or exactly how burdensome this would be.

23         I think that because we are already limited to the

24    scope of phase 1, this time period does not materially add to

25    the burdens of the case and it is fully proportional to the

1    claims that we are bringing because it's directly in line with

2    the claims that we have alleged.

3         THE COURT:  Let me segue now to Ms. Moller and start

4    where I'm ending with Mr. Oppenheimer.

5         Ms. Moller, how do we reconcile the position that you

6    are taking here with the point Mr. Oppenheimer made, which is

7    that proportionality is accounted for because the nature of

8    discovery that's proceeding in phase 1 is quite limited by

9    definition?

10         MS. MOLLER:  A few points on that, your Honor.

11         First, it's the Relator's complaint that governs

12   discovery here.  When you think about proportionality, you

13   think about whether the burdens outweigh the need for discovery

14   in this case.

15         The Relator only has very broad allegations of

16   continuing conduct, which numerous courts, including the SDNY

17   in *Bilotta*, has said it is not sufficient to broaden a time

18   period of discovery.  The discovery after 2015 is not necessary

19   for this case.  So there is that aspect of proportionality.

20         Also, on the burden side of proportionality, what we

21   are talking about here is nearly doubling the time period of

22   the allegations that are alleged in his complaint, and we have

23   looked at some numbers, your Honor.  We are talking about nine

24   custodians documents that the parties have already agreed upon,

25   and they are asking for more custodians.  We are talking about

1   pages of search terms that are expected to return hundreds of

2   thousands of additional documents across that time period.

3        And we have looked at some preliminary numbers, and we

4   are talking about a more than 150 percent time, the amount of

5   data that we would have to search through, review, and produce

6   pursuant to this request.

7        This is a substantial increase of what is already

8   substantial discovery, very one sided in a case where they

9   don't have any real allegations in their complaint beyond

10  February of 2015 and, as a reminder, a case in which we don't

11  even have a ruling on a motion to dismiss yet.

12       THE COURT:  How could they have allegations post

13  February 2015, given the nature of the allegations in general

14  in this case?  Don't they need to take discovery to develop

15  those allegations?

16       MS. MOLLER:  No, your Honor.  The burden is on them in

17  their complaint to make allegations to support -- the *Bilotta*

18  case on this point is directly on point.  It's another case

19  that deals with allegations in a false claims act context with

20  allegations of antikickback statute violations.  And, there,

21  just like here, the complaint had alleged that there was

22  ongoing -- that the conduct continued.  The Court ruled that

23  that wasn't sufficient to allow broad discovery for many years.

24       As another point on this, your Honor, that decision,

25  it makes sense, right.  They filed the complaint with the

1    Relator alleging claims up to February 2015.  The government

2    investigated it.  It is the government's investigation and

3    government's request to keep it unsealed that kept it -- to

4    keep it sealed, that kept it sealed until 2020.

5           Just because the government sought to investigate this

6    for five years doesn't give Relator a right for unfettered

7    discovery and a fishing expedition essentially through May of

8    2020.  Even the government, your Honor, only requested

9    documents up until that mid 2015 time period.

10          THE COURT:  Your point being that if this were a

11   normal lawsuit filed in 2015, discovery would have presumably

12   commenced in 2015 and, therefore, the fact that it was on hold

13   for five years shouldn't essentially be held against you.  Is

14   that the point?

15          MS. MOLLER:  Correct.  They have nothing in their

16   complaint that would support sort of the ongoing discovery for

17   the five-year period that the government sought to keep this

18   under seal.

19          THE COURT:  You have just made a couple of points with

20   respect to burden in terms of the amount of data that is going

21   to have to be collected if the time frame was expanded.  None

22   of that really was set forth in your letter.  So you're

23   supplementing the point on burden now for the first time.

24   There was not really a lot with respect to burden

25   particularized, in any event, in your letter.  Is that fair?

1          MS. MOLLER:  That is fair, your Honor.  It takes time

2     to sort of dig into these issues to run searches about the data

3     that's been retained.  Most of the custodians that we are

4     discussing here are former custodians, so you have to look into

5     those issues.  But we did detail in our brief the number of

6     custodians, the amount of time period, but I didn't supplement

7     that with additional information on the scope, yes.

8          THE COURT:  Are there any other points, Ms. Moller,

9     that you wanted to make beyond the letter that you all

10    submitted?

11         MS. MOLLER:  One other point, your Honor.

12    Mr. Oppenheimer raised this issue of this declaration.  It

13    seems really that that's the main thing that they are hanging

14    their hat on today about allegations of continuing conduct.

15         That document that was referenced in that declaration

16    is just an advertisement that says that the Regimen Profiler is

17    a tool that exists on McKesson's public website.  That does

18    nothing to show any support for their allegations about how

19    McKesson allegedly used that tool and their continuing conduct.

20         It's not McKesson's burden to disprove that.  It is

21    Relator's burden in his complaint to show that he has

22    allegations, well-put allegations supporting discovery under

23    Rule 26(9)(b) and the existing case law.

24         THE COURT:  Thank you, Ms. Moller.

25         Mr. Oppenheimer, it's your application, so I am going

 1    to give you the last word, if there are any other last words

 2    that you want to share.

 3              MR. OPPENHEIMER:  Sure.  Thank you, your Honor.

 4              I'll start with the burden point.  As your Honor

 5    noted, that was not in McKesson's letter.  There was not even a

 6    reservation that they would have continued developing it.  We

 7    had multiple meet and confers on the topic.  They didn't

 8    mention it there.  They didn't mention these numbers in their

 9    letter.  I don't think those are properly before the Court now.

10              Ms. Moller just mentioned the exhibit to their motion

11    to dismiss.  I don't think I agree that we principally hang our

12    hats on that.  I think that is confirmatory evidence, which the

13    case law says once there is any heft behind the allegations in

14    the complaint, that gets you over the hump.  I do think it is

15    sufficient, but it is not necessary.  But it does more than

16    just say that this tool exists.  I'm reading from it right now.

17    It says:  Regimen profiler valuable insight for you and your

18    patient.

19              This is a tool that McKesson is continuing to

20    advertise as being available to the physician practices it

21    works with and having value.  Those are really the key aspects

22    of this case that we have alleged here.  So I think even though

23    we don't have to rely on this, I think it does a lot to show

24    that there is reason to continue discovery up until the

25    present.

1         The last point I would make is that McKesson relied

2    extensively in its letter and in its argument on the *Bilotta*

3    case from 2015.  I just note that the quotations that they use

4    from that case and the holdings that they rely on are for

5    requests for discovery that go beyond the alleged time period

6    in that complaint.

7         We are not asking here for discovery that goes past

8    what the amended complaint alleges as the time frame.  We are

9    asking for discovery that goes up to what the amended complaint

10   alleges when it says that the conduct continues through the

11   date of filing.  So I don't think that *Bilotta* really helps

12   them in any significant way here because it's a different

13   request that was at issue in that case.

14        THE COURT:  Thank you, Mr. Oppenheimer.  Thank you,

15   Ms. Moller.

16        As I said at the outset, the issue before the Court is

17   the time period for McKesson's search and production of phase 1

18   documents in response to the Relator's first set of requests

19   for production and the disagreement, as I understand it, is the

20   February 2015 date that McKesson proposes, as opposed to the

21   May 2020 date that the Relator has proposed.  My understanding,

22   and the parties have suggested nothing otherwise, is that they

23   have agreed to a discovery start date of January 2011 for most

24   of the Relator's requests, and they are still negotiating the

25   start date for a handful of the other requests.

1          Rule 26 of the Federal Rules of Civil Procedure

2     provides that parties may obtain discovery regarding any

3     nonprivileged matter that is relevant to any party's claim or

4     defense.  That is sort of the baseline from which we commence

5     any assessment here.

6          Of course, discovery is not boundless and courts do

7     have the authority to confine discovery to the claims and

8     defenses asserted in pleadings, and the parties don't have

9     entitlement to develop new claims or defenses, for that matter,

10    that are not already identified in the pleadings.  I think

11    that's all quite well settled.  So discovery may not be used as

12    a fishing expedition, as is often said, to discover additional

13    instances of wrongdoing beyond those that are already alleged.

14    I think the case law, including Judge Gardephe's decision in

15    *Bilotta* and others, all stand for that proposition, and courts

16    can exercise wide discretion in making decisions of the kind

17    presented before the Court today.

18         Having reviewed the letters that the parties have

19    submitted and now having heard argument, I am of the view and

20    persuaded that McKesson's proposed range through the date the

21    original complaint was filed is the appropriate range at this

22    time.

23         I am of the view that discovery should be limited to

24    the period during which specific instances of wrongdoing which

25    have been alleged in the complaint govern, and I don't believe

1   that the Relator's complaint provides a basis for the lengthier

2   period that has been proposed.  The Relator's proposed period

3   postdates his employment with McKesson by almost six years and

4   the filing of the original complaint by five years.  McKesson's

5   proposed period covers Relator's entire employment with the

6   company.

7           It makes more sense to me that the time frame should

8   be limited to the period in which the Relator is alleged to

9   have witnessed the conduct that forms the basis of the

10  pleadings here.  That's not an insubstantial period, by the

11  way.  But, rather, as agreed to by McKesson, it will span more

12  than four years.

13          The Relator is seeking broad discovery in a time

14  period post 2015 for which his allegations are only general in

15  nature as far as the course of continuing conduct.  His

16  pleadings of alleged ongoing illegal activity without more do

17  not justify a more expansive discovery period.  The scattered

18  documents from the CIB production to the Department of Justice

19  do not change the outcome here.  It's the pleadings and the

20  complaints that are alleged therein that dictate the scope of

21  discovery, not documents that are produced in discovery or

22  otherwise.

23          Additionally, the Relator has not offered any specific

24  rationale why he needs almost a decade of discovery to flesh

25  out his allegations.  Proportionality requires line drawing and

1   the lines that Relator proposes to draw are simply too wide on

2   the record before the Court.

3           I do not find the argument of inefficiency to be of

4   sufficient concern to warrant a different result.  If the

5   Relator is not able to substantiate his claims for the period

6   of time in which he worked at McKesson, which spans more than

7   four years, the Court is hard-pressed to understand why he

8   should be allowed to engage in a search beyond those boundaries

9   for evidence in support of his claims.  Moreover, there is no

10  disagreement that the 2001 to the 2015 time frame will cover

11  the period in which the at-issue tools were allegedly used with

12  the phase 1 customers and when Relator worked at McKesson and

13  said to have observed the conduct that has given rise to his

14  claims.

15          Finally, while it does follow in many circumstances

16  that an expanded discovery period will necessarily impose an

17  undue burden on the producing party, I don't think the record

18  is sufficiently developed for the Court to decide conclusively

19  that the proposed expanded period would be an undue burden for

20  McKesson.

21          Ms. Moller spoke to this issue in greater detail

22  during the argument than in the letter that McKesson submitted,

23  but even with what she provided, I'm not confident that I would

24  have a basis to find on the record currently in front of the

25  Court that there would necessarily be an undue burden.  I say

1   this only so that the record is clear that my decision to

2   impose the narrower time frame is reached on the basis that the

3   Relator's pleadings do not provide a sufficient predicate for

4   it.  Thus, it would not be proportionate to the needs of the

5   case at this juncture rather than in any way relying on

6   McKesson's undue burden argument.

7            That constitutes my decision on the issue presented to

8   the Court today.

9            Do counsel have any other issues they need to raise or

10  shall we set a date for the next conference?

11           MR. OPPENHEIMER:  For Relator, your Honor, just a very

12  minor housekeeping point.  We just wanted to note that at the

13  last conference the Court had granted an order to allow a

14  filing under seal.  Inadvertently, that pleading had not been

15  filed yet.  We will plan to put that up this week.  We wanted

16  to alert you so no one thinks it's a new motion that requires a

17  new decision.

18           THE COURT:  You're simply filing something consistent

19  with the order previously issued, but it won't require any

20  further action from the Court.

21           MR. OPPENHEIMER:  That's correct.

22           THE COURT:  Shall we pick a July date to put on the

23  calendar in the event there are issues that need to be

24  resolved.  Shall we aim for perhaps a month out, say July 16,

25  or would people not prefer a Friday or we could do something

 1    mid week.  I'm happy to --

 2              MR. OPPENHEIMER:  Your Honor, if we could aim for the

 3    next week, that I think makes it a bit easier scheduling for

 4    the Relator's side, but we are somewhat flexible on which day.

 5              THE COURT:  No problem.  How is Wednesday, July 21?

 6              MS. MOLLER:  That works for McKesson, your Honor.

 7              MR. OPPENHEIMER:  I have a deposition that day.  Can

 8    we possibly do the 22nd or the 23rd?

 9              THE COURT:  Sure.  How about Thursday, the 22nd?

10              MR. OPPENHEIMER:  Perfect.  Thank you.

11              THE COURT:  That's OK, Ms. Moller, on your end?

12              MS. MOLLER:  If it's in the afternoon, your Honor.

13              THE COURT:  Shall we say same time, 3:00?

14              MS. MOLLER:  That works for McKesson, your Honor.

15              THE COURT:  We will say July 22 at 3.

16              Like the last time, any letters that you need to

17    submit, you will submit by the 15th the previous week, and any

18    responses will be submitted no later than the 20th.

19              MR. OPPENHEIMER:  Yes, your Honor.  Thank you very

20    much.

21              THE COURT:  Thank you both very much.  Thank all.

22    Have a good day and a good rest of the week.  Take care,

23    everyone.

24              (Adjourned)

25